UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

KEVIN B. PRASAD,

          Plaintiff,

    v.

DENISE CHU, et al.,

          Defendants.

Case No. 22-cv-02720-JST

**ORDER GRANTING DEFENDANTS'
MOTION FOR SUMMARY
JUDGMENT; DENYING PLAINTIFF'S
MOTION FOR SUMMARY
JUDGMENT**

Re: ECF Nos. 88, 94

Plaintiff has filed a *pro se* civil rights complaint under 42 U.S.C. § 1983.  For the reasons set forth below, the Court GRANTS Defendants' motion for summary judgment, ECF No. 88; and DENIES Plaintiff's motion for summary judgment, ECF No. 94.

**DISCUSSION**

**I.      Procedural Background**

*Initial Complaint (ECF No. 1)*. Plaintiff commenced this action by filing the complaint docketed at ECF No. 1.  The initial complaint named as defendants San Mateo County and numerous individual San Mateo County officials, including the sheriff, undersheriff, assistant sheriff, and the correctional facility captains and commanders.  The initial complaint alleged that Plaintiff's religion prohibited the consumption of pork; that the vegetarian diet served Plaintiff included gravy made from beef, as the gravy label stated "made with . . . pork sausage flavor"; and that jail officials refused to provide Plaintiff with food ingredient labels so that he could determine whether he was being served beef.  The complaint did not specify what constitutional provisions had been violated and requested *inter alia* an injunction allowing Plaintiff to see nutrition and ingredient labels upon request and damages.  *See generally* ECF No. 1.  In the screening order, the Court found that the complaint stated a cognizable First Amendment claim against defendant San

Mateo County for serving Plaintiff pork products despite knowing that pork consumption violated the dictates of his religion. ECF No. 10 at 2-3, 5. The Court dismissed the remaining defendants and ordered service of the complaint. ECF No. 10.

*First Summary Judgment Motion (2024)*. On March 6, 2024, the Court granted summary judgment in favor of defendant San Mateo County, finding that the record established that the gravy served Plaintiff did not contain pork as the ingredient label did not list pork or any pork product flavor; that the description label stating "made with real buttermilk butter and pork sausage flavors" is reasonably read as stating that gravy is made with ingredients that give the gravy the flavor of the pork sausage; and that the ingredient's reference to "natural flavors" indicated that the flavors were derived from a plant or plant byproduct, and did not indicate that the flavor was derived from an animal or an animal byproduct where the ingredient label does not list any animal or animal byproduct. ECF No. 52 at 10-11. The Court noted that in Plaintiff's opposition to the summary judgment motion, he indicated that he was also challenging the denial of his request for ingredient labels so that he could determine whether his diet complied with his religious dietary restrictions. *Id.* at 11-12. The Court therefore found that, liberally construed, the complaint's allegation that San Mateo County Correctional Services dietician Denise Chu and Maple Street Correctional Center administrative lieutenant John Kovach (collectively, "Defendants") refused to provide Plaintiff with ingredient labels so that he could determine whether his diet complied with his religion stated cognizable claims for violation of Plaintiff's First Amendment to free exercise of his religion and his Fourteenth Amendment right to due process. *Id.* The Court ordered Defendants to file a dispositive motion regarding these claims. *Id.* at 11-15.

*Amended Complaint (ECF No. 53)*. On March 14, 2024, Plaintiff filed an amended complaint. ECF No. 53. The amended complaint named as defendants San Mateo County and various San Mateo County correctional officials, including defendants Kovach and Chu. The amended complaint again alleged that Plaintiff was being served gravy that contained pork in violation of his religious beliefs; and that prison officials were refusing his requests for ingredient labels which prevented him from determining whether the foods he was being served complied

United States District Court
Northern District of California

United States District Court
Northern District of California

with his religious beliefs.  The amended complaint sought the following relief: (1) declaratory relief; (2) a preliminary and permanent injunction ordering defendants to stop serving Plaintiff the "Custom Culinary Mix Country Pan Roast Instant," stop serving Plaintiff any food containing pork, to provide Plaintiff with accurate nutrition and ingredient labels for all foods served him, and to allow Plaintiff to inspect the kitchen and diet room for any cross-contamination anytime he makes such a request; (3) damages and costs of suit; and (4) any additional relief that the Court deemed just and proper.  *See generally* ECF No. 53.  The Court screened the amended complaint as follows:

> As an initial matter, the Court DISMISSES with prejudice the claim arising out of the allegation that the gravy served Plaintiff contains pork products.  The Court has already dismissed this claim with prejudice.  ECF No. 52.  The Court also DISMISSES with prejudice the following requests for relief: (1) a preliminary and permanent injunction ordering Defendants to stop serving Plaintiff the "Custom Culinary Mix Country Pan Roast Instant," ordering Defendants to stop serving Plaintiff any food containing pork; and allowing Plaintiff to inspect the kitchen and diet room for any cross-contamination anytime he makes such a request; (2) compensatory damages of $2 million per defendant; and (3) punitive damages of $2 million per defendant.  These requests for relief arise out of the already dismissed allegation that the white country gravy served contains pork products.
>
> Liberally construed, the amended complaint's allegation that defendants Chu and Kovach refused to provide Plaintiff, a pretrial detainee, with ingredient labels for the foods served him so that he could confirm that they did not contain pork products states cognizable claims for violation of his First Amendment right to free exercise and the Fourteenth Amendment's Due Process Clause. *O'Lone v. Estate of Shabazz*, 482 U.S. 342, 348 (1987) (to prevail on First Amendment free exercise claim, pretrial detainee must prove that government official (a) "substantially burden[ed]" detainee's exercise of sincerely held religious belief; and (b) did so in unreasonable manner—i.e., official's actions were not "rationally related to legitimate [governmental] interests."); *Bell v. Wolfish*, 441 U.S. 520, 545 (1979) (when pretrial detainee challenges conditions of confinement, proper inquiry is whether conditions amount to punishment in violation of Due Process Clause of Fourteenth Amendment).  The Court DISMISSES the claims arising out of the failure to provide nutrition labels. Plaintiff only needs ingredient labels to ascertain whether pork is being served.  The remaining defendants are dismissed as the amended complaint does not directly link them to the refusal to provide the ingredient labels.

ECF No. 80 at 7-8.  The Court ordered defendants Chu and Kovach to file a dispositive motion regarding the cognizable claims.  *Id.* at 13-15.

3

II.     **Summary Judgment Motions (ECF Nos. 88, 94)**

Defendants have filed a summary judgment motion, ECF No. 88, and Plaintiff has filed a cross-summary judgment motion, ECF No. 94.  The Court considers both motions together.

A.     **Factual Background**

The following facts are undisputed unless otherwise indicated.

During the relevant time period, Plaintiff was a pretrial detainee in the custody of San Mateo County and housed at either McGuire Correctional Facility ("MCF") or Maple Street Correctional Center ("MSCC").  ECF No. 1 at 3.

Plaintiff entered the custody of San Mateo County on or about April 26, 2018.  ECF No. 16-1 ¶¶ 8:11-12.  Plaintiff is a lifelong follower of Sanatan Dharam Hinduism, and this religion prohibits the consumption of beef and pork.  ECF No. 1 at 5.  Plaintiff informed correctional staff of his religious dietary restrictions.  In response, correctional staff placed Plaintiff on the jail's lacto-ovo vegetarian diet by May 4, 2018.  ECF No. 1 at 14.  The lacto-ovo vegetarian diet excludes all meat, but includes dairy and eggs.  ECF No. 16-1 at 3.  A typical daily menu for the lacto-ovo vegetarian diet is as follows:

| Breakfast | 1 six oz juice<br>1 cup cereal and/or 2 slices of whole grain bread<br>2 hard-boiled eggs or two ounces of peanut butter<br>1 half pint of milk |
|-----------|---------------------------------------------------------------|
| Lunch     | 4 slices of whole wheat bread<br>Rotation of the following<br>    4 slices of cheese with 2 mayo or<br>    Pack of peanut butter w/ 2 jellies or<br>    1 cup of hummus<br>½ cup of carrot or celery sticks<br>1 fresh fruit<br>½ pint milk |
| Dinner    | Vegetarian casserole, vegan patties, or tofu<br>1 cup of pasta or rice and/or 2 slices of bread<br>½ cup cooked vegetables<br>½ cup canned fruit<br>½ pint milk |

ECF No. 16- 1 at 21.

During the relevant time period, defendant Chu served as the San Mateo County

United States District Court
Northern District of California

4

Correctional Health Dietician. ECF No. 88 at 17. In this capacity, defendant Chu is responsible for reviewing all foods served to inmates, including the ingredients and nutritional information; designing inmate menus, including menus for inmates with specific health or religious requirements; updating the Diet Manual for San Mateo County's correctional facilities; providing nutrition education; filling out inmates' dietary charts; and serving as a liaison between Correctional Health Services and the jail kitchen. ECF No. 88 at 17. Defendant Chu reviews the menus to confirm that inmates are receiving meals that meet their dietary restrictions, whether religious or medical, and that inmates receive adequate nutrition consistent with the state regulations. ECF No. 16-1 at 2. More than ten different types of diets are available to inmates, and some inmates have individualized dietary needs, such as an allergy. The jail population is constantly changing as inmates move in and out of custody. For example, on June 16, 2025, defendant Chu was responsible for managing the special diets of approximately 120 inmates. ECF No. 88 at 17. Defendant Chu states that, given her workload, it is not feasible to have a general policy of providing ingredient labels on demand to any and all inmates on a special diet. ECF No. 88 at 17-18. Defendant Chu maintains a binder with the food labels for the products currently being served to inmates in the San Mateo County jails and can consult the labels to see the nutritional information and ingredients for each food product. ECF No. 16-1 at 2.

During the relevant time period, defendant Kovach was a lieutenant working in the Maple Street Correctional Center. ECF No. 88 at 22. In this capacity, defendant Kovach is responsible for keeping inmates and staff safe; transporting them to and from court; conducting inmate count and inspection; overseeing visits, meals, medical appointments and programming; and conducting safety checks. Defendant Kovach also is responsible for the following additional tasks: authorizing the purchase of supplies and equipment; serving as a liaison with court and probation personnel; inspecting the jails ensure secure and sanitary conditions; and reviewing and assigning reports and consulting with investigators on case progress. ECF No. 88 at 22-23.

In June 2020, an inmate who had worked in the jail kitchens incorrectly informed Plaintiff that the gravy served in the lacto-ovo vegetarian diet contained pork. ECF No. 1 at 14; ECF No. 52. The gravy does not contain meat or meat byproducts. ECF No. 52. Due to the

United States District Court
Northern District of California

misinformation, on May 29, 2020, Plaintiff requested the ingredient label for "the gravy that they serve here," stating that he wanted to see the ingredients for religious, not dietary, reasons. ECF No. 1 at 7. On May 31, 2020, defendant Chu provided Plaintiff with the label for the Country Gravy Mix, with the accompanying note: "Let me know if the one you want is this – white country gravy." ECF No. 1 at 7-9. Plaintiff believed that because the description label stated "made with . . . pork sausage flavors," and the ingredient label stated "natural flavors," the gravy must contain pork or a pork byproduct. ECF No. 1 at 4; ECF No. 31 at 2-3. However, the ingredient label does not list pork, or any meat, or any meat byproduct as a label. The phrase "natural flavors" on the ingredient label refers to, and is followed by, the following ingredients: annatto (a plant product), turmeric, and milk. ECF No. 16-1 at 2.

Based on his incorrect belief that that the gravy contained meat, Plaintiff requested the ingredient labels for all the food he is served, first via a health services request and then twice via grievances. Correctional officials denied all three requests for the ingredient labels for all foods served Plaintiff, requested additional clarification as to what Plaintiff was looking for, and stated that they would ensure that he was provided with a diet that met his religious needs.

(1) July 2020 Health Services Request. On July 14, 2020, Plaintiff submitted the following Health Services Request form:

> To Dietician, Thank you for the information. Can you please give me the same ingredients label for: French Toast, Biscuits, Pancakes, farina, Fruits, Baked Beans, Chili Beans, Hummus, and oil if they use any to prepare food with. I would like the label and not the info they gave you.

ECF No. 88 at 20. On July 20, 2020, defendant Chu responded, "Mr. Prasad – you are not on any special diet – What are you looking for because – no, I am not going to give you all the labels you request." ECF No. 88 at 20.

(2) July 2020 Grievance. On or about July 15, 2020, Plaintiff submitted a grievance stating that he had been informed by a kitchen worker that the gravy in his meals was not in accordance with his religious beliefs; that his review of the gravy ingredient label indicated that it contained pork sausage; and that he had therefore been served food that violated his religious beliefs for over 27 months. He requested food labels directly from the package of all his

6

foodstuffs so that he could review whether the foodstuffs were in accordance with his religious beliefs and to be compensated for "this gross negligence." ECF No. 88 at 25. On July 23, 2020, defendant Kovach responded to Plaintiff's July 15, 2020 grievance:

> Mr. Prasad,
> We will not give you the labels to the food packages. We will provide you with a religious diet. Please make a detailed request on what religious diet you would like to receive. If you can only eat certain food and are concerned we cannot provide such a diet feel free to list restrictions on your request.

ECF No. 88 at 25.

(3) October 2021 Grievance. On or about October 11, 2021, Plaintiff submitted a grievance stating that that he was being served gravy that contained pork, in violation of his religious beliefs; requesting that white gravy not be served with his food; and requesting the food and ingredient labels for his foods. ECF No. 88 at 27. On October 21, 2021, Plaintiff received the following response: "Greeting, Our gravy does not contain pork. Sorry for the misinformation you have received." ECF No. 88 at 27.

On April 8, 2025, Plaintiff left the custody of San Mateo County and was transferred to the custody of the California Department of Corrections and Rehabilitations. ECF No. 85.

## B.    Summary Judgment Standard

Summary judgment is proper where the pleadings, discovery and affidavits show there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *See* Fed. R. Civ. P. 56(a) (2014). Material facts are those that may affect the outcome of the case. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute as to a material fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *See id.*

A court shall grant summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial [,] . . . since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). The moving party bears the initial

burden of identifying those portions of the record that demonstrate the absence of a genuine issue of material fact. *Id.* The burden then shifts to the nonmoving party to "go beyond the pleadings and by [his] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *See id.* at 324 (citing Fed. R. Civ. P. 56(e)).

The court's function on a summary judgment motion is not to make credibility determinations or weigh conflicting evidence with respect to a disputed material fact. *See T.W. Elec. Serv. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987). The evidence must be viewed in the light most favorable to the nonmoving party, and inferences to be drawn from the facts must be viewed in a light most favorable to the nonmoving party. *See id.* at 631. If the evidence produced by the moving party conflicts with evidence produced by the nonmoving party, the court must assume the truth of the evidence submitted by the nonmoving party. *See Leslie v. Grupo ICA*, 198 F.3d 1152, 1158 (9th Cir. 1999).

### C. Legal Standard for First Amendment Free Exercise Claim and Fourteenth Amendment Due Process Claim

Prisoners "do not forfeit all constitutional protections by reason of their conviction and confinement in prison." *Bell v. Wolfish*, 441 U.S. 520, 545 (1979). Prisoners retain the protections afforded by the First Amendment, "including its directive that no law shall prohibit the free exercise of religion." *O'Lone v. Estate of Shabazz*, 482 U.S. 342, 348 (1987). However, "'[l]awful incarceration brings about the necessary withdrawal or limitation of many privileges and rights, a retraction justified by the considerations underlying our penal system.'" *Id.* (quoting *Price v. Johnston*, 334 U.S. 266, 285 (1948)). Due to the mere fact of incarceration, a prisoner's First Amendment rights are necessarily "more limited in scope than the constitutional rights held by individuals in society at large." *Shaw v. Murphy*, 532 U.S. 223, 229 (2001). Consequently, an inmate retains only "those First Amendment rights that are not inconsistent with his status as a prisoner or with the legitimate penological objectives of the corrections system." *Pell v. Procunier*, 417 U.S. 817, 822 (1974). Similar principles apply with respect to pretrial detainees. *See Bell*, 441 U.S. at 545 (pretrial detainees retain "at least" the same constitutional rights as

8

United States District Court
Northern District of California

convicted prisoners, including "freedom of . . . religion under the First and Fourteenth Amendments") (citations omitted); *Pierce v. Cnty. of Orange*, 526 F.3d 1190, 1209 (9th Cir. 2008) ("as with other First Amendment rights in the inmate context, detainees' rights may be limited or retracted if required to 'maintain [ ] institutional security and preserv[e] internal order and discipline'") (internal quotation marks and citation omitted; alterations in original).

To prevail on a First Amendment free exercise claim, a pretrial detainee must prove that a government official (a) "substantially burden[ed]" the pretrial detainee's exercise of a sincerely held religious belief; and (b) did so in an unreasonable manner—i.e., the official's actions were not "rationally related to legitimate [governmental] interests." *See O'Lone*, 482 U.S. at 348–50. A substantial burden exists when the state places substantial pressure on an adherent to modify his behavior and to violate his beliefs. *Long v. Sugai*, 91 F.4th 1331, 1337 (9th Cir. 2024). A substantial burden is more than an inconvenience on religious exercise; rather, a substantial burden has a tendency to coerce individuals into acting contrary to their religious beliefs. *Id.* In determining whether a prison official's restriction on a religious practice is a reasonable, rather than an "exaggerated," response to a legitimate governmental interest, courts consider four factors, specifically: (1) whether there is a "valid, rational connection" between the regulation and a legitimate government interest put forward to justify it; (2) "whether there are alternative means of exercising the right that remain open to prison inmates"; (3) whether accommodation of the asserted constitutional right would have a significant impact on guards and other inmates; and (4) whether ready alternatives are absent (bearing on the reasonableness of the regulation). *Turner v. Safley*, 482 U.S. 78, 89–90 (1987). Further, when the restriction affects pre-trial detainees, substantive due process requires that the restriction or regulation cannot be intended to serve a punitive interest. *Bell*, 441 U.S. at 535.

When a pretrial detainee challenges conditions of his confinement, the proper inquiry is whether the conditions amount to punishment in violation of the Due Process Clause of the Fourteenth Amendment. *See Bell*, 441 U.S. at 535 n.16. "To constitute punishment, a government action must (i) harm a detainee and (ii) be intended to punish him." *Houston v. Maricopa Cty.*, 116 F.4th 935, 940 (9th Cir. 2024). If a particular condition or restriction of

pretrial detention is reasonably related to a legitimate governmental objective it does not, without more, amount to punishment. *See Bell*, 441 U.S. at 539. Because states must be able to take steps to maintain security and order at pretrial facilities, restrictions and conditions that are reasonably related to a facility's interest in maintaining jail security and order are not, without more, unconstitutional punishment. *See Bell*, 441 U.S. at 540. To determine whether a particular condition or restriction of pretrial detention amounts to punishment in the constitutional sense of the word, the court first looks to whether the disability imposed is for the purpose of punishment or whether it is but an incident of some other legitimate governmental purpose. *See Bell*, 441 U.S. at 538. Absent a showing of an express intent to punish, whether a condition or restriction amounts to punishment generally will turn on whether there is an alternative, rational purpose for the condition/restriction, and whether the condition/restriction appears excessive in relation to that alternative purpose. *See Bell*, 441 U.S. at 538. In addition, in addressing a Section 1983 claim brought by a pretrial detainee, "courts must defer to the judgment of correction officials unless the record contains substantial evidence showing their policies are an unnecessary or unjustified response to problems of jail security." *Florence v. Board of Chosen Freeholders of the County of Burlington, et al.*, 566 U.S. 318, 322-23 (2012).

### D.   San Mateo County, Equal Protection Claim, and Nutrition Labels

Plaintiff incorrectly argues that the Court has failed to acknowledge his equal protection claim; that the Court has allowed this action to proceed against San Mateo County, in addition to defendants Chu and Kovach; and that he is entitled to nutrition labels as well as ingredient labels.

*Equal Protection Claim*. The screening order found that the amended complaint only stated cognizable First Amendment free exercise and Fourteenth Amendment due process claims against defendants Chu and Kovach. The amended complaint does not state a cognizable equal protection claim because it does not allege facts from which it can be reasonably inferred that Defendants denied Plaintiff's request for ingredient labels because they intended to discriminate against Plaintiff or against Sanatan Dharam Hinduism practitioners; or that Defendants are engaged in disparate treatment. *Monteiro v. Tempe Union High School Dist.*, 158 F.3d 1022, 1026 (9th Cir. 1998) (plaintiff alleging equal protection claim based on race or other suspect

10

classification must plead intentional unlawful discrimination or allege facts susceptible of inference of discriminatory intent); *see also Furnace v. Sullivan*, 705 F.3d 1021, 1030 (9th Cir. 2013) (to state equal protection claim, plaintiff must allege that defendant state actor acted at least in part because of plaintiff's membership in protected class); *Byrd v. Maricopa Cnty. Sheriff's Dep't*, 629 F.3d 1135, 1140 (9th Cir. 2011) (claim that alleged harmful treatment but mentioned nothing about disparate treatment was properly dismissed). The jail's policy is that all inmates, regardless of their faith, are not entitled to all ingredient labels for their entire diet upon demand.

*San Mateo County*. After finding that the amended complaint stated cognizable claims against defendants Chu and Kovach, the Court's screening order dismissed the remaining defendants, including San Mateo County. The amended complaint does not state a claim against San Mateo County because there is no Section 1983 liability simply because an entity supervised or employed the alleged wrongdoer. *See Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989) (no respondent superior liability, or supervisory liability, under Section 1983, i.e., no liability under theory that one is liable simply because he supervises person who has violated plaintiff's right).

*Nutrition Labels*. The Court's screening order specifically dismissed the claims arising out of the refusal to provide nutrition labels. Plaintiff's concern is whether his food contains beef or pork or their byproducts. This information is found in the ingredient labels, not the nutrition labels.

### E.    Summary Judgment Motions

#### 1)    First Amendment Claim

Defendants argue that the refusal to provide all ingredient labels upon demand did not substantially burden Plaintiff's religious exercise because his religious dietary needs were met by the lacto-ovo vegetarian diet which had been vetted by a trained and experienced dietician and because Plaintiff has no basis for his claim that the jail-provided diet violated his religious principles. Defendants note that access to the ingredient labels would not have assisted Plaintiff in determining whether his diet complied with his religious requirements as Plaintiff does not understand the labels, as illustrated by Plaintiff's misreading of the labels on the gravy, and as Plaintiff has never sought a second opinion from someone qualified to understand the labels. *See*

United States District Court
Northern District of California

ECF No. 88 at 9-13.

Plaintiff argues that he is entitled to judgment in his favor on his First Amendment free exercise claim and opposes Defendants' summary judgment motion for the following reasons. Plaintiff relies on ingredient labels to determine which foods comply with his religious beliefs, and cannot exercise his religion if he is uncertain as to what he is eating. In requesting ingredient labels, Plaintiff is employing the same "trust but verify" approach that was adopted by the federal government when laws were passed requiring proper labelling of food so that consumers could verify whether companies were accurately representing the safety of their food products. The refusal to provide ingredient labels imposed an undue burden on Plaintiff because he had to refrain from eating prison meals, and imposed an undue burden on his family because his family had to provide Plaintiff with funds to purchase foodstuffs at the commissary that were compliant with his religious beliefs. Defendants' claim that providing the ingredient labels would create an undue burden is insincere because corporations, restaurants, and hospitals are able to provide these labels when required by state and federal law, and because San Mateo County Hospital and the San Mateo jails are both run by San Mateo County, and San Mateo County Hospital was able to provide these labels to Plaintiff during his stay there. There is a triable issue of fact as to whether Defendants violated his First Amendment right to free exercise because there is a fundamental right to know what one is eating especially when one's religion has dietary restrictions. There is no legitimate penological interest in denying Plaintiff ingredient labels. Plaintiff has thirty years of experience in reading food labels because food labeling laws require labels to be accurate and leave no room for differences of interpretation. Plaintiff has over thirty years of experience in understanding his religion, whereas defendant Chu lacks any experience in understanding his religion. Plaintiff "cannot fully explain to the court how he will successfully convince a reasonable jury [that his First Amendment right has been violated] without betraying the tactics he will use at trial;" and that "[a]ny and all questions the defendants pose shall be answered at trial." *See generally* ECF Nos. 93, 94.

Viewing the record in the light most favorable to Plaintiff, the Court finds that Plaintiff has not demonstrated a triable issue of material fact as to his First Amendment free exercise claim.

12

The failure to provide Plaintiff with all ingredient labels has not coerced Plaintiff into acting contrary to his religious beliefs.  Jail officials have represented that the foods being served to Plaintiff comply with his religious requirements, and he has no evidence, circumstantial or direct, that those representations are untrue.  The inability to obtain ingredient labels for all the foods served him therefore does not substantially burden his religious practice.

Plaintiff's arguments in opposition are not persuasive.  While it might be good correctional policy to display the ingredients used in prison food so that incarcerated persons know what they're eating, as of now there is no constitutional right to such information, and no court has held that the First Amendment right to free exercise requires prisons to allow inmates to verify the ingredients of the foods they're served.  Plaintiff's purchase of commissary foods represents a deliberate choice on his part, not a substantial burden arising from the failure to provide ingredient labels.  Plaintiff made that choice because he *had* received an ingredient label but misread it.  The ability of other entities to provide nutrition and ingredient labels does not establish that Defendants are constitutionally required to provide these labels upon request.

### 2)   Fourteenth Amendment Claim

Defendants argue that the refusal to provide Plaintiff with ingredient labels on demand for all foods served him did not violate the Due Process Clause because their actions were not punitive and served the legitimate governmental interest of allowing jail staff to focus on their duties rather than collecting ingredient labels for inmates on special diets where the inmates have not demonstrated that the diet does not meet the inmates' needs.  Defendants note that they responded supportively to Plaintiff's dietary requests in that they never questioned the sincerity of his beliefs, never attempted to serve him food that did not meet his religious needs, and responded in a timely and respectful fashion to his written inquiries.  ECF No. 88 at 13-14.

Plaintiff argues that there is a triable issue of fact as to whether Defendants violated his Fourteenth Amendment right to due process because they eliminated his right to know what he is being served without providing him due process.  Plaintiff further argues that it would not be unduly burdensome for Defendants to provide him with the ingredient labels because there are numerous jail employees to whom this task could have been assigned, such as defendant Kovach's

numerous subordinates, or the five civilian kitchen workers, or the 64 inmate kitchen workers. *See generally* ECF No. 93.

Viewing the record in the light most favorable to Plaintiff, the Court finds that Plaintiff has not demonstrated a triable issue of fact as to whether Defendants' refusal to provide all ingredient labels on demand constituted punishment in violation of the Due Process Clause of the Fourteenth Amendment.

The refusal has neither harmed nor punished Plaintiff. Plaintiff has been provided with a diet that complies with his religious beliefs. The jail has demonstrated a willingness to provide ingredient labels for specific items upon request. Defendants have denied any punitive intent, and Plaintiff has not provided any evidence to the contrary. Finally, the refusal is reasonably related to the legitimate governmental objective of efficiently allocating employee time and jail resources.

### 3)    Qualified Immunity

Defendants argue that they are entitled to qualified immunity because there is no clearly established right for pretrial detainees to receive ingredient labels for foods served them where there is no evidence that the foods violate the detainee's religious dietary requirements. ECF No. 88 at 14-15. Plaintiff argues that Defendants are not entitled to qualified immunity because they should be aware of the First Amendment's free exercise clause, and this clause has been clearly established law for over a century. He also argues that if there is no caselaw that establishes a right to know what he is eating, this case could be it. *See generally* ECF No. 93.

Qualified immunity is an entitlement, provided to government officials in the exercise of their duties, not to stand trial or face the other burdens of litigation. *Saucier v. Katz*, 533 U.S. 194, 200 (2001). To determine whether an officer is entitled to qualified immunity, the Court must consider whether (1) the officer's conduct violated a constitutional right, and (2) that right was clearly established at the time of the incident. *Pearson v. Callahan*, 555 U.S. 223, 232 (2009). Courts are not required to address the two qualified immunity issues in any particular order, and instead may "exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Id.* at 236.

United States District Court
Northern District of California

"If the Court finds that plaintiff['s] allegations do not make out a statutory or constitutional violation, 'there is no necessity for further inquiries concerning qualified immunity' thereby ending the need to inquire into whether the right was clearly established." *Silva v. White*, No. 08CV0891 JAH (POR), 2011 WL 13356038, at *2 (S.D. Cal. Feb. 16, 2011) (quoting *Saucier v. Katz*, 533 U.S. 194, 201 (2001)).  In this case, because the defendants did not violate Plaintiff's constitutional rights, there is no need for the Court to address whether such rights were clearly established for purposes of qualified immunity.

## CONCLUSION

For the reasons set forth above, the Court GRANTS Defendants' motion for summary judgment, ECF No. 88, and DENIES Plaintiff's motion for summary judgment, ECF No. 94. Judgment is entered in favor of Defendants and against Plaintiff.  The Clerk shall terminate all pending motions as moot and close the case.

This order terminates ECF Nos. 88, 94.

**IT IS SO ORDERED.**

Dated:  March 24, 2026



_____
JON S. TIGAR
United States District Judge